HOSEA GREEN *v.* JOHN Q. DAVIDSON, *et als.*

1. WILL. *Construction.* A testator devised land to his wife during life or widowhood, and upon her death or marriage directed the proceeds of its sale to be divided equally among his children, etc., etc.,

 *Held,* that the testator intended each of the children to take a vested interest transmissible upon their death either to their real or personal representatives.

 Cases cited : McClung *v.* McMillan, 1 Heisk., 655 ; Bridgewater *v.* Gordon, 2 Sneed, 5.

2. SAME. *Conversion.* A will directing a conversion of realty into money at the termination of a limited estate created thereby, passes to the legatees as personalty, and where any of them die during the continuance of such estate, their shares will vest in their personal representatives and not in their heirs.

 Authorites cited : King's Digest, ₂2119; White & Tudor's Leading Cases in Equity, Vol. 1, p. 799.

3. SAME. *Administrator with will annexed.* An administrator with the will annexed has the same power to sell land as is conferred by the will upon the executor.

 Case cited : Harrison *v.* Henderson, 7 Heisk, 348.

 Code cited : ₂2240.

4. SAME. *Specific performance. Statute of Frauds.* A purchaser of land sold by an administrator in the execution of a power cannot have specific performance in the absence of a written memorandum signed by the administrator or his authorized agent.

FROM BEDFORD.

No record can be found.

McFARLAND, J., delivered the opinion of the Court.

In the first of these bills, Hosea Green, the complainant, in substance charges, that he was the guardian of the minor heirs of F. A. Kellar, and as such, entitled to receive their share of the estate of Joseph Kellar, deceased, in the hands of John Q. Davidson, and that said Davidson forced him in October, 1862, to receive in part discharge of this liability, one thousand dollars in Confederate money, which sum the bill seeks to recover of said Davidson. By an amendment, said heirs of F. A. Kellar join as co-complainants, and seek the same relief upon substantially the same allegations.

In a second amended bill, said heirs of F. A. Kellar charge in substance, that, the money claimed by them in their first bill, arose from the sale of a tract of land in Bedford County, disposed of by the will of their grandfather, Joseph Kellar. They charge that, representing their father, F. A. Kellar, they were the owners of two-twelfths of the tract; that their father, F. A. Kellar, took one-twelfth under the will, and that he held by purchase, the share of another brother. They charge that no valid sale had ever been made of their interest in the land, and seek to recover the same. That the sale made by John Q. Davidson did not pass their interest. In their first bill they sought to recover their part of the fund arising from this sale upon the ground that the sale was valid; in the 2nd amendment, they seek to recover the land upon the

ground that the sale did not pass their interest, and made Couch, the purchaser, a party. These two claims were inconsistent, but a demurrer upon this ground was overruled.

Couch, the purchaser, files a cross-bill, in which he charges that he purchased the land at a public sale, from Davidson, administrator, with the will annexed, of Joseph Kellar, deceased, and has paid for the same in full, but has obtained no deed, and prays a specific execution.

Davidson, in his answer, takes the position that he never sold the land as administrator with the will annexed, but he only acted as agent for a part of the heirs and devisees who did sell and make Couch a deed conveying him whatever title they had, but not conveying any title that may have been in the heirs of F. A. Kellar. He admits that he did collect part of the purchase money, and believing that F. A. Kellar's heirs were entitled to part of it, and believing that Green was their guardian, paid them part of it, including the $1,000 in Confederate money, in 1862, but denies the charges of the original bill as to duress.

Joseph Kellar died about 1840, leaving a widow and twelve children; by his will, he left his land to his wife during life or widowhood, and upon her death or marriage, he directed his land to be sold on a credit of one, two and three years, " and the money to be equally divided among his children, and that if any of his children marry, that they have an equal

part of his estate as those already married, to be given them out of his perishable property." He directs that his children be made equal, taking into consideration what he had given those already married. This, with the appointment of executors, and directions as to the payment of his debts, etc., is the substance of the will. Francis A. Kellar, the father of the present complainants, and one other of Joseph Kellar's children, died after his death, but before the death of his widow; upon which some doubt arose as to whether their children or representatives took any share in the the fund, it being assumed, and as, is now argued, that the fund was to be divided among his children as a class, and only those filling the description at the death of the tenant for life were entitled.

We think it clear, however, that it was the intention of the testator that each was to take a vested interest, transmissible upon their death, either to their real or personal representative. See *McClung* v. *McMillan*, 1 Heisk., 655; *Bridgewater* v. *Gordon*, 2 Sneed, 5.

The next question is, whether there was a valid sale of the entire tract, or only a sale of the interest of such of the heirs as made the deed. We think it clear, that, under the provisions of the will, in connection with the Code, §2240, the administrator with the will annexed, had full power to sell, this was a power vested in the executors, as such. See on this question, *Harrison* v. *Henderson*, 7 Heisk., 348.

The proof taken in connection with the circumstances shows that the sale was made by the admin-

istrator, as such, under the power of the will. This was the only real necessity for his appointment, and for the bond he gave, he advertised as administrator, and we think the purchasers so understood the sale, and certainly thought he was purchasing the entire tract. The theory that Davidson only sold as agent of part of the legatees, is not consistent with his conduct in paying out the fund, for he distributed it upon the assumption that the sale was of the entire tract, and that all were entitled to their share of the proceeds, and so he paid part of the money to Green, as the guardian of the F. A. Kellar heirs; but after the sale, the deed was executed only by the heirs, or a part of them, and in his subsequent transaction, Davidson assumed the character of agent. There is no evidence of any written memorandum signed by Davidson or any one authorized by him, conducting the sale, and he pleads the Statute of Frauds and Perjuries. We cannot, therefore, decree a specific execution against him. But we hold that the decree of the Chancellor giving to the complainants, the heirs of F. A. Kellar, their two-twelfth interest in the land, is erroneous. They have no title to the land.

The will of Joseph Kellar did not devise the land to his children, but directed a sale and a division of the money arising therefrom, it is manifest this does not vest them with title to the land, so that they may recover it in specie. The right, if any, would be to have a sale of the land as directed by the will, and to have their share of the money arising therefrom.

But by the will of Joseph Kellar, this land is directed to be sold upon the death of the widow, and converted into money, and the money to be divided among his children. This disposition of the land is absolute, and not dependent upon any condition, or subject to the discretion of his executors. In such case it seems well settled by authority, that the estate passes to the legatees as personalty; and where any of the children, as in this case, die during the life of the widow, or before the land is to be sold, their shares will vest in their personal representatives. This proceeds upon the ground, that the land is to be regarded as converted into money, and disposed of by the will as money. This seems well settled. See the authorities collected at length in 1st Vol. White & Tudor's Leading Cases in Equity Title Equitable Conversion, page 799, and our decisions, so far as they have gone, are to the same effect. See the cases referred to, King's Digest, 2119.

From this it results, that neither the heirs of F. A. Kellar, or their guardian, can in any aspect, recover; but his personal representative is the party entitled to the legacy under the will, that is the share of the proceeds of the sale of the land. In this view, the bills of Hosea Green and the heirs of F. A. Kellar must be dismissed upon the ground that they have no right to recover either the land or the fund, and the consideration of the other questions becomes immaterial. As we have said, Couch cannot have a specific execution against Davidson, because

there was no written contract made by Davidson, valid under the Statute of Frauds.

The decree will be reversed and the several bills dismissed, <u>each</u> party paying <u>their</u> own, costs.